UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| v. : | Case No. 1:22-cr-291-3 |
| : | |
| KYLE YOUNG, : | Honorable Judge Amy B. Jackson |
| *Defendant.* : | |
| : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING
AND ASSESSMENT OF 18 U.S.C. § 3553(a) SENTENCING FACTORS AND
MOTION FOR VARIANCE**

COMES NOW, Kyle Young, by and through counsel, and provides the Court with his position regarding the application of the sentencing factors to the Court's obligation to impose a sentence "sufficient, but not greater than necessary to comply" with the factors found in 18 U.S.C. § 3553(a). Mr. Young also respectfully requests a downward variance from the sentencing guidelines for the reasons set forth herein.

As correctly noted in the Presentence Report ("PSR"), the base level offense in this matter for violation of 18 U.S.C. § 111(a)(1) is 14, § 2A2.2(a), United States Sentencing Commission, Guidelines Manual; five levels are added because the offense involved serious bodily injury to the victim, USSG § 2A2.2(b)(3)(B); and six levels are added because the victim was a government officer. Factoring in a three-level reduction for acceptance of responsibility, the offense level is correctly calculated at either 22 or 24, contingent on the Court's ruling on the contested restraint of the victim two-level enhancement, USSG § 3A1.3. Based on a criminal history category IV, the applicable sentencing range is either 63 to 78 months (offense level 22) or 77 to 96 months (offense level 24).

Because there was no qualifying restraint of the victim, Mr. Young respectfully requests that the Court reject the Government's position under USSG § 3A1.3, and find that offense level

22 is correct.  From that calculation, a downward variance to no more than 24 months of imprisonment is appropriate based on the nature and circumstances of the offense and the history and characteristics of the defendant.

Mr. Young is brutally aware of the seriousness of his conduct on January 6, 2021, and that of the larger collective who gathered in violent protest that day.  He has taken and continues to take fully accountability and responsibility for his actions, and he understands that a stern sentence is appropriate as a punishment to him and as a deterrence to others.  Nonetheless, a sentence of no more than 24 months would sufficiently address his actions on that day in light of the principles of sentencing.

## Background

On May 5, 2022, Mr. Young pleaded guilty to a single count of assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C § 111(a)(1).  Mr. Young is a 38-year-old, dedicated father of four.  Despite a difficult upbringing and, at times, personally destructive history—as seen in his criminal history and as documented in the PSR—Mr. Young has overcome many of life's earlier challenges to maintain employment, raise a family, and be an otherwise productive member of society.

Mr. Young is not a life-long political follower and entirely disavows any continued interest.  But unfortunately, following the 2020 election, Mr. Young was injected with the claims and distortions touted by many in opposition to the election results.  He made the decision to travel to the Capitol from his home in Iowa to engage in what he believed would be peaceful protest, in exercise of his first-amendment rights.  He did not bring a weapon or other instrumentality of battle, he did not coordinate with any groups, and he did encourage others to violate the law.  He did not enter the Capitol building and he did not destroy property.  But as he

walked away from the protests of that day, he was overcome with remorse, particularly as he saw the news coverage that detailed the destruction and violence of that day. He was not defiant; he was defeated.

For his part, while he was in the unruly crowd outside of the Capitol, Mr. Young briefly made contact with the wrist of a member of law enforcement. While his action alone did not injure the officer, Mr. Young is aware and troubled by the fact that his action was contemporaneous with others who did inflict greater harm on the officer. Mr. Young lives with deep regret that he was there that day, let alone in contact with this officer. In the course of reviewing discovery and reviewing public coverage, he is well aware of the physical and emotional trauma this day inflicted on the victim and he expresses nothing by regret and sympathy. Mr. Young knows that he should have left upon seeing the actions of the crowd that afternoon; instead, he acted in a way that harmed this officer, while harming his own family and future. His wife writes, "Kyle has missed out on the last 14 months of milestones of our two year old son, Jack. He was 15 months old the last time he saw Kyle. Jack doesn't understand who dad is." Exhibit 1, letters from family and friends.

Shortly after the incident, Mr. Young saw his information on an FBI list associated with the protest. He immediately turned himself in. He has been fully cooperative in subsequent investigations and maintained remorse through court proceedings. Mr. Young regrets his actions and wants to take responsibility. *See* Exhibit 2, letter from Kyle Young. As demonstrated in the attached letters from family and friends, Mr. Young's character will ensure that he fulfills the obligations that the Court imposes on him, so that he can once again rejoin and support his family. This commitment should be both encouraged and fostered through a sentence that appropriately balances punishment, deterrence, and rehabilitation.

**Argument**

A.   **The Court shall impose a sentence sufficient, but not greater than necessary, to comply with 18 U.S.C. § 3553(a).**

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with" 18 U.S.C. § 3553(a)'s mandates.  These include considering the "nature and circumstances of the offense and the history and characteristics of the defendant," reflecting the seriousness of the offense, affording adequate deterrence, protecting the public, and providing necessary rehabilitation to the defendant.  18 U.S.C. § 3553(a)(1-2).

In *United States v. Booker*, 125 S.Ct. 738 (2005), the United States Supreme Court restored to sentencing judges the power to use discretion in determining appropriate sentences. "In the wake of *Booker*, therefore, the discretion of a sentencing court is no longer bound by the range prescribed by the sentencing guidelines.  Nevertheless, a sentencing court is still required to 'consult [the] guidelines and take them into account when sentencing.'"  *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (quoting *Booker*, 125 S.Ct. at 767).  In light of *Booker*, "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *Id.* (citation omitted).

B.   **18 U.S.C. § 3553(a) Factors to Consider in Sentencing.**

    1.   **Nature and Circumstances of the Offense.**

Mr. Young pleaded guilty to a single count of assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C § 111(a)(1).  The charged conduct, along with the events of January 6, 2021, in general, had serious consequences, as reflected in the statement of facts, PSR, and Criminal Information.  The Statement of the Offense details the victims "significant

4

and painful injuries" and the "excruciating pain" suffered in the moment. [ECF 120, ¶ 14.] Mr. Young not only injured this officer, but his actions contributed to the overall chaos and lawlessness by many.

Thankfully Mr. Young used no weapon and did not pursue further harm to the victim; his interaction was brief, and frankly perplexing. Even now Mr. Young does not have a good understanding or explanation for what he did or why he did it—he just knows he was wrong, and his actions contributed to that lawlessness. Overcome by the events around him, he acted out under the influence of the day, with no clear purpose or goal. Sadly these purposeless actions and decisions caused such harm to the victim and great ruin directly to Mr. Young.

        a.     **Mr. Young did not "Restrain" the Victim.**

While he assaulted the officer as defined in 18 U.S.C. § 111(a)(1), Mr. Young did not "restrain" the victim as defined in § 3A1.3 of the Guidelines. The Defense objects to the 2-level enhancement "if a victim was physically restrained in the course of the offense"; but a review of the specific facts related to this claim by the Government also informs the Court's consideration of the nature and circumstances of the offense. Meaning, not only did Mr. Young not restrain the victim, he also did not assault the victim with greater violence or malice; he only made brief contact with the victim's wrist. While this is dangerous to an officer in such a vulnerable position, it does not warrant the enhancement—particularly when the vulnerability and risk to the officer is already addressed in the six-level enhancement based on the officer's status.

Physical restraint is defined as the "forcible restraint of the victim such as being tied, bound, or locked up." U.S.S.G. § 1B1.1; *United States v. Drew*, 200 F.3d 871, 880 (D.C. Cir. 2000) ("the use of the modifier 'such as' in the definition of 'physical restraint' found in § 1B1.1… indicates that the illustrations of physical restraint are listed by way of example rather

than limitation"). The "brief holding" of a victim during an assault does not qualify for a § 3A1.3 sentencing enhancement. *United States v. Mikalajunas*, 936 F.2d 153, 155 (4th Cir. 1991) (holding that § 3A1.3 sentencing enhancement did not apply when defendant briefly held a victim during a fatal stabbing). On the other hand, the restraint enhancement does apply when a victim is held at gunpoint, locked in a room, or otherwise restrained from escape. *See United States v. Stokley*, 881 F.2d 114 (4th Cir. 1989) (holding that the defendant's restraint qualified for a sentence enhancement when he locked a victim in a room with an explosive device); *see United States v. Lloyd*, 7 F. App'x 291 (4th Cir. 2001) (holding that § 3A1.3 sentencing enhancement applied where "[Defendant] pointed the gun at the clerk, forced him into the office and then forced him to lead [Defendant] to the [Victims'] apartment, and finally forced all three victims to lie on the floor before he left.").

The Guidelines further indicate that a § 3A1.3 sentencing enhancement does not apply "where the offense guideline specifically incorporates this factor, or where the unlawful restraint of a victim is an element of the offense itself (e.g., this adjustment does not apply to offenses covered by §2A4.1 (Kidnapping, Abduction, Unlawful Restraint))." U.S.S.G § 3A1.3; *see Mikalajunas*, 936 F.2d at 155 (holding that victim restraint enhancement does not apply in a homicide case because "[e]very murder involves the ultimate restraint. Such terminal restrain is simply an element of the crime of homicide … An upward adjustment for restraint is to be made in the context of an act which adds to the basic crime.").

Mr. Young's brief encounter with Officer M.F. does not warrant a § 3A1.3 enhancement. Mr. Young made contact with M.F.'s wrist for roughly three seconds. Similar to *Mikalajunas*, in which a § 3A1.3 enhancement was not appropriate when a defendant "briefly held" a victim before a fatal stabbing, Mr. Young only held on to M.F.'s wrist for a short time. 936 F.2d at 155.

6

Mr. Young did not forcibly keep M.F. in the crowd.  He did not prevent his escape from other protesters.  Mr. Young did not threaten M.F. with a weapon to keep him from escape.  He only touched M.F.'s wrist for a few seconds.  While Mr. Young understands that any unwanted touching is wrongful, Mr. Young's conduct is not enough to qualify for a § 3A1.3 enhancement.  To hold otherwise, would allow sentencing enhancements for any simple touch.

Further, Mr. Young's conduct constitutes assault and therefore does not qualify for a § 3A1.3 enhancement.  Mr. Young admits that he assaulted Officer M.F. by making contact with his wrist.  Restraint is inherent in assault similar to the way restraint is inherent in Kidnapping or Abduction.  Any assault restrains an individual's freedom of space and movement.  Because Mr. Young assaulted M.F., it is assumed that he restricted his freedom of movement.  Thus, Mr. Young is not eligible for a §3A1.3 enhancement.

While the enhancement is not appropriate, Mr. Young understands that his actions allowed others to perpetrate more harmful offenses.  He is haunted by his actions and the danger in which he placed the victim.  And he is forever ashamed that this took place in the presence of his son.

In a letter to the Court, Mr. Young explains: "I am not affiliated with any groups or organizations. I had no plans to participate in the events that happened. I was only there to witness a historical event." Exhibit 2.  While at the rally, he began to see the danger and violence of the crowd.  Upon seeing the broken barricades, the acts of violence against law enforcement, and hearing the violent chants, he should have immediately turned around and gone home.  He did not.

He left soon after with his son and instantly regretted his actions.  Mr. Young felt ashamed of his contact with law enforcement and embarrassed that his son saw his father lose

control and fail to be the role model that he should have been. His regret deepened once he learned of the full extent of the protest:

> I still can't believe I let myself and my son get swept up into such terrible events. I do not condone or advocate violence especially against law enforcement. I am ashamed my son was witness to those troubled events. By the time we reached the car I was feeling horrible and still do about everything that happened.
>
> The next morning, I heard that over 180 officers had been severely injured and hospitalized. It made me sick to my stomach to hear that and think I had taken part in it.

Exhibit 2. Upon learning of an FBI investigation against him, Mr. Young immediately turned himself in and has fully cooperated with law enforcement since.

After January 6, not only did Mr. Young regret his conduct, but he also completely disavowed any future behavior. And while others' words may have led him there that day, he understands that the consequences he faces now are only a result of his actions. He takes full responsibility for his role in the protest and the injury of Officer M.F.

    **2.** **History and Characteristics of the Defendant.**

Mr. Young is 38 years old. He was born and raised in Iowa, and his family waits for him in Iowa as he sits in jail far from his life. Despite a difficult upbringing, he has worked hard to overcome a history of substance abuse and mental health issues. Mr. Young has created a successful law-abiding life for himself and his family.

Mr. Young grew up with his mother, stepfather, and siblings. Due to a lack of supervision at home and mental health issues early on, Mr. Young became involved in the juvenile justice system resulting in dated criminal history from his youth. His first conviction took place over two decades ago in 1998 when he was 14 years old. His last conviction took place over twelve years ago in 2010 when he was 26 years old.

Since then, he dedicated himself to building a family and career. In 2011, he married his wife. To financially support the couple, Mr. Young took a job in the fast-food industry. He worked his way into better-paying jobs until he began a career in HVAC. Prior to his arrest, he worked as an HVAC employee at Proctor Mechanical Corporation.

Mr. Young and his wife have four children. He loves his family and is dedicated to providing a loving and supportive home. In a letter to the Court, his wife writes:

> He is the fun parent. The kids are always out and about with him. Driving around on four wheelers or side by sides. They love being in nature with dad. All the silly fun is to be had with dad.

Exhibit 1, Andrea Young Letter.

His friends and family have also seen Mr. Young change his life for his wife and children. His mother-in-law writes:

> Kyle stepped in and married Andrea, raising [Andrea's son] as his own. He worked long hours and made sure [Andrea's son] had everything he needed, both financial and emotionally. I watched them have two more beautiful children together and have a full family, complete with pets, and then to finally buy a house. I wanted Kyle work on that house every day to make improvements. I know Kyle has made mistakes. His biggest love is for his family and being able to provide for them.

Exhibit 1, Julie Hartman Letter.

Mr. Young has many friends and community members who have written to the court to discuss his character as well:

> Kyle is always helping me with anything I need. He has helped me put furniture together multiple times. He would pick up my furniture items so I would not have to pay delivery charges. As I am getting older, he is always offering his assistance. It is always wonderful to see Kyle interact with his kids. There are always huge smiles and laughter. Kyle is always insisting I come over and spend time with the family. I always feel welcome.
>
> I could have never asked for a better man to marry my daughter. He is my only son in-law who will do anything for me. Kyle has never been a lazy man. He always has had a job. When I stop by their house, he is always working on something. He

9

> put solar panels on their home and had one of the boys up there learning also. He is always teaching the kids how do important things like building and using tools.

Exhibit 1, Lora Weatherman Letter.

> I have been a friend of Kyle Young's for almost 10 years. Kyle is one of the hardest working people I know. Whether he was putting in overtime at work or working on the house at home. He was always working to provide for his family and to give his kids the best life possible. Not only is he a great family man but he's also a great friend.

Exhibit 1, Joseph Lienemann Letter.

During his incarceration, Mr. Young has relied on these friends and family. He needs his family, and his family needs him. They are aware of the severity of this offense. They will support him and ensure that he refrains from any future criminal conduct.

### 3. The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.

The nature and circumstances of the offense and of Mr. Young must be balanced with imposing a sentence that reflects the seriousness of this offense, respects the rule of law, and provides a just punishment. Mr. Young understands the seriousness of this charge and, indeed, the entirety of what occurred on January 6, 2021. Officer M.F. was seriously injured and an already untenable division of politics was worsened by the broader unprecedented assault on the peaceful turnover of power.

Mr. Young takes full responsibility for his actions and his role. He has spent every day since January 6 reliving that day, and he faces the constant reminder of his wrongdoing as he sits behind bars, removed from his family, his life, and his freedom.

As serious as Mr. Young's actions were, they must be viewed in context when considering sentencing. Unlike others, Mr. Young did not bring any weapons with him to the rally. Nor did he bring any items that suggested he anticipated what ended up

10

occurring.  He did not bring body armor or a helmet.  He did not bring a radio or a gas mask.  In fact, he did not even bring any political apparel.  He did not enter the Capitol and he did not remain defiant following January 6—as many have done.

While his lack of preparation or anticipation does not change what happened that day, it is important context.  His specific conduct, for which he is embarrassed and ashamed, did contribute to the overall chaos, and certainly to the trauma of M.F.  But his actions contributed decidedly less than the actions of those who brought tear gas and weapons, than the individual who pulled M.F. down the stairs, and less than the individual who repeatedly tased M.F.  This does not excuse Mr. Young, but it is relevant context when evaluating the severity of his specific conduct.

    **4.**    **To Afford Adequate Deterrence to Criminal Conduct.**

Mr. Young has been adequately deterred and is not likely to engage in future criminal conduct.  He is certain to face consequences far beyond what he would have previously imagined.  His family faces constant harassment, his name is forever associated with his actions on the internet (and while some claims are entirely accurate, not surprisingly many are far from correct), and he will always be branded by his offense that day.  He accepts this reality, and he understands that real consequences are just and appropriate.

Since his arrest in this case, Mr. Young has been incarcerated for over 17 months.  Mr. Young and his family have already begun to feel the effects of this charge while he has been away.  His children are eager to have their father back at home with them, and Mr. Young is eager to return.  Every day he serves is a reminder of what he risks losing through further criminal conduct.

Mr. Young's criminal history does not suggest that he will reoffend. In fact, it suggests the opposite. Mr. Young's criminal history from his youth has shown him the life that he does not want to live. It revolved around substance abuse and related criminal conduct. He cleaned up his life, formed a family, contributed to the community, and stayed out of trouble. The charged conduct here bears no resemblance to his prior conduct.

Upon his release, he intends to return to his law-abiding life: "When this is all over, I want to go home to be a good husband to my wife. I want to be the good father my children deserve and be able to provide for my family." These are goals that the principles of sentencing should foster.

Mr. Young's criminal history leads to a higher guidelines calculation than is necessary for justice, punishment, and the protection of the public. Because of Mr. Young's troubled youth, his sentence is over double the amount of incarceration other protesters will serve for similar conduct. While criminal history is an important factor in sentencing, Mr. Young's criminal history is dated, non-violent, and unrelated to this charge. Mr. Young has led a law-abiding life for ten years after his previous charges. Thus, a longer sentence because of past mistakes is not necessary to deter Mr. Young. For all of these reasons, a downward variance from the calculated guidelines is appropriate.

### 5. To Protect the Public from Further Crimes of the Defendant.

Mr. Young is not a danger to the community. While Mr. Young has a dated criminal history from his youth, it primarily consisted of substance abuse-related offenses. It does not include violence or conduct related to this charge. It does not suggest that Mr. Young is a dangerous individual or poses any threat to the public.

Further, Mr. Young's conduct on January 6 is isolated to a unique set of circumstances that unfolded that are not likely to be replicated. The citizens who participated in the Capitol riot were "called to Washington, DC, by an elected official, [and] prompted to walk to the Capitol by an elected official." *United States v. John Lolos*, 1:21-cr-00243-APM (sentencing held on November 19, 2021). People such as Mr. Young were "a pawn in the game played by people who know better." *Id.* Without provocation from former leaders and a mob of thousands of people, Mr. Young would not have conducted himself the way that he did. He was used by others. While he bears the responsibility for his actions, he should not bear the responsibility for others as well.

C. **The Sentencing Guidelines and Downward Variance.**

Mr. Young agrees that the following Sentencing Guidelines, as noted in the Plea Agreement and the PSR, apply in this case:

- Section 2A2.2 of the Guidelines establishes a base offense level of 14.
- Section 2A2.2(b)(3)(B) of the Guidelines provides for a 5-level increase due to the serious bodily injury sustained by the victim.
- Section 3A1.2(a)(1) of the Guidelines provides a 6-level increase because the victim was a government officer, and the offense of conviction was motivated by such status.

For the reasons argued above, section 3A1.3 of the Guidelines should not apply, and the Government's request for a 2-level increase because the victim was physically restrained should be denied. After factoring in a 3-level reduction for acceptance of responsibility, and a criminal history category IV, the applicable sentencing range is 63 to 78 months.

In light of his role in the offense, his history and characteristics, and the need to impose an appropriate sentence, Mr. Young asks that this Court consider a downward variance and impose no more than 24 months of imprisonment. To award more would create unwarranted sentencing disparities. This is a severe sentence that also provides a rehabilitative path in satisfaction of the principles of sentencing.

## Conclusion

For these reasons, Defendant respectfully requests a period of incarceration not to exceed 24 months, followed by conditions as appropriate and recommended by Probation.

                                                Respectfully submitted,

                                                Kyle Young
                                                By Counsel

   /s/
Samuel C. Moore
Virginia State Bar No. 73233
Law Office of Samuel C. Moore, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Email: scmoore@scmoorelaw.com
Phone: 703-535-7809
Fax: 571-223-5234
*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of September, 2022, I electronically filed the foregoing with the Clerk of Court Using the CM/ECF system, which will then send a notification of such filing (NEF) to:

>Cara Gardner
>Kimberly Paschall
>Assistant United States Attorneys
>Judiciary Center
>601 D Street, NW
>Washington, DC 20001

>    /s/
>Samuel C. Moore
>Virginia Bar No. 73233
>Law Office of Samuel C. Moore, PLLC
>526 King St., Suite 506
>Alexandria, VA 22314
>Email: scmoore@scmoorelaw.com
>Phone: 703-535-7809
>Fax: 571-223-5234